The MIHALEK CORPORATION and Lawrence Patrick Mihalek, Plaintiffs-Appellants,

v.

The STATE OF MICHIGAN, Governor James J. Blanchard, the Dept. of Commerce of the State of Michigan, Ralph J. Gerson, Director, Ross Roy, Inc., Defendants-Appellees.

Nos. 84–1851, 84–1854, 85–1593 and 85–1986.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 21, 1986.

Decided March 18, 1987.

Opinion on Rehearing June 8, 1987.

James M. Deimen, Ann Arbor, Mich., Richard A. Heikkinen, The Heikkinen Law Firm, Howell, Mich., for plaintiffs-appellants.

John H. Dudley, Jr., Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for Swank Motion Pictures.

Irwin Karp, Port Chester, N.Y., for Author's League.

Nancyellen Keane (argued), Asst. Atty. Gen., Com. of Va., Richmond, Va., amicus curiae.

Dennis Egan, Butzel, Keidan, Simon, Myers & Graham, Detroit, Mich., S.B. Rosenfeld (argued), Paul, Weiss, Rifkin, Wharton & Garrison, New York City, for Nat. Music Pub. Ass'n.

Harry G. Iwasko, Philip J. Smith (argued), Thomas A. Hallin, Asst. Attys. Gen., Lansing, Mich., for defendants-appellees in No. 84–1851.

Frank J. Kelley, Harry G. Iwasko, Jr., Philip J. Smith (argued), Thomas A. Hallin, Lansing, Mich., for defendants-appellees in No. 84–1854.

Frank J. Kelley, Louis J. Caruso, Harry G. Iwasko, Jr., Philip J. Smith (argued), Thomas A. Hallin, Lansing, Mich., for defendants-appellees in No. 85–1593.

Thomas A. Hallin, Asst. Atty. Gen., Lansing, Mich., Frank J. Kelley, Louis J. Caruso, Harry G. Iwasko, Philip J. Smith (argued), Robert D. Brignall, Detroit, Mich., for defendants-appellees in No. 85–1986.

Before MERRITT, WELLFORD and NORRIS, Circuit Judges.

WELLFORD, Circuit Judge.

Lawrence Patrick Mihalek and his wholly owned corporation, Mihalek Corporation, collectively herein called Mihalek (as done in plaintiffs' brief, and as referred to by the district court), sued the State of Michigan, its governor, and its Department of Commerce and director, claiming, in effect, that these defendants misappropriated his copyrighted ideas and materials for a statewide advertising campaign promoting tourism and business and agricultural enterprise in the state. The background of this controversy is generally undisputed. Mich-

igan officials, faced with the problems of recession in that state, decided during 1980 to develop an advertising and promotional campaign to foster awareness of the advantages of the state by way of tourism, agricultural and business advantages and attractions. A Washington, D.C., public relations firm was engaged to develop specific ideas and a campaign program to encourage greater enterprise and commerce within Michigan. A campaign styled "Say Yes to Michigan" was created and announced; later in 1984 a Detroit advertising firm was engaged to promote and develop this theme, which it called the "Yes M!CH!GAN" campaign.

Mihalek had initiated his own concept of a promotional program to help build a better general economic, business, and tourist climate in Michigan beginning in late 1980. He approached numbers of persons, to many or most of whom he was unknown, to try to familiarize them with his ideas and general campaign suggestions. Some of those whom he contacted and submitted materials were state officials or legislators. Mihalek had not held himself out as being in the advertising or public relations business prior to that time. His background had rather been in automobile sales and leasing. Mihalek called his proposal, "Michigan is Good News," and he incorporated a number of sketches, pictures and clippings about events giving an affirmative tone to opportunities in Michigan despite much bad news that affected the business climate and condition in that state. Mihalek copyrighted the materials in his proposed program at some point in his presentations and during the development of the so-called "Say Yes to Michigan" promotion.

With the assistance of his Michigan state representative, Mihalek was able to procure meetings with lower echelon state government officials initially and later arranged meetings with Michigan Commerce Department officials to present his proposals. Several of the documents and materials were retained by state officials.

Mihalek contends that he was unaware that Michigan officials, including several with whom he had made contact and whom he had made a presentation while his work was in progress, were meeting with other public relation firms about Michigan's campaign. He claims that they received and used the ideas and materials he created without payment or recognition.

Michigan officials made arrangements, as stated, with well known and experienced public relations firms to carry out the "Say Yes to Michigan", and "Yes M!CH!GAN" programs, which defendant state officials had adopted and approved. Mihalek's suit followed, claiming infringement of copyright, violation of trademark, and violation of constitutional rights under 42 U.S.C. § 1983 (taking without due process and compensation), and pendent state claims for unfair competition and misappropriation of work product. Defendants do not deny that plaintiff is the holder of and has the right to the copyrighted materials or trademark materials in dispute, described collectively as the "Michigan is Good News" campaign.

Defendants moved to dismiss the complaint and amended complaint, urging Eleventh Amendment immunity and denying any misappropriation as charged. The district court, after a full discussion of the immunity contention, dismissed many of Mihalek's claims. *See* 595 F.Supp. 903 (E.D.Mich.1984). The court, in effect, reduced the claims to petitions for injunctive relief against individual state officers. Prior to Mihalek's suit in federal court, Michigan had sued Mihalek in state court seeking and obtaining a temporary restraining order to prevent Mihalek's interference with Michigan's public relations campaign then in progress in 1984. The state action was removed to federal court and the cases were consolidated.

The district court judge also later held that after personally examining Mihalek's materials and those of the State of Michigan utilized in its "Say Yes to Michigan" and "Yes M!CH!GAN" campaigns, they were not substantially similar as a clear matter of fact, and further, as a matter of law there was no material issue in dispute to preclude his granting defendants' motion

for summary judgment in the remaining claims for injunctive and/or declaratory relief. Summary judgment was granted defendants on all federal causes of action, but the district court held that it lacked jurisdiction to adjudicate the pendent state law claims and ordered a remand of these claims to state court. As to the added defendant, the Detroit public relations firm utilized in Michigan's official campaign, the district court entered its summary judgment motion on all claims. The district court declined to reconsider its decision, 630 F.Supp. 9 (1985), and this appeal ensued. This court has permitted a number of amicus curiae briefs to be filed and has permitted on a limited basis amicus curiae participation in oral argument.

With respect to the infringement of copyright claim, Mihalek makes the following assertions in his appellate brief:

MIHALEK'S property, most of which is presently unpublished, were all properly protected under the provisions of the Copyright Act 17 U.S.C. §§ 101 et seq., 302(a). Notice of copyright was clearly placed on all of the works, even though not necessary for unpublished works, 17 U.S.C. § 401(a). Infringement thereof is therefore with actual notice of claim to copyright.

MIHALEK created a wholly original advertising campaign, its "product" being the State of Michigan. What MIHALEK'S valid copyrights protect is the proposals and advertisements themselves, and as grouped together as a "compilation", see 17 U.S.C. § 101, definitions.

MIHALEK devised a combination of expressions devised to sell the State of Michigan and to make people feel good about the State of Michigan, which were reduced to concrete form. It is *not* the product (THE STATE OF MICHIGAN), but the design, layout, arrangement, expression, portrayal and description in the advertisements and proposals, which are protected individually and as a whole, by copyrights to MIHALEK. With valid

copyrights, the exclusive rights enumerated under 17 U.S.C. § 106(1), through (5), are attached to all of MIHALEK'S works.

The first appeal in these consolidated cases arises out of the district court's holding that (1) the state and its departments and officials acting for the state were immune under the Eleventh Amendment; (2) only prospective injunctive relief against state officials might be obtained even *if* plaintiff established his case; and (3) no effectual relief could be obtained from alleged state law violations. Judge Joiner found no entitlement to relief and plaintiffs appealed. After the factual finding of no substantial similarity and the legal conclusion that there was no copyright infringement, Judge Joiner entered summary judgment for defendants.[1]

We have jurisdiction of this appeal, as the state defendants concede, under the copyright and trademark claims.

Mihalek argues that summary judgment was inappropriate with respect to this issue, because, among other reasons, he presented affidavits by "average lay observers" to the effect that there was substantial similarity. He contends therefore that the affidavits presented a contested material issue precluding summary judgment. *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094 (6th Cir. 1984) cited by plaintiffs, holds that in copyright infringement cases summary judgment is "sparingly" granted, and that "an appellate tribunal must review the evidence in the light most favorable to the party opposing the judgment." *Id.* at 1097. We are mindful of these precautions in reviewing the district court's actions in granting summary judgment to the defendants. *Wickham*, however, involved our affirmance of a district court's grant of summary judgment in a copyright infringement action precisely because "[t]he district court correctly concluded that as a matter of law no substantial similarity existed between plaintiff's and defendants' works." *Id.* at 1097. The district court in *Wickham*, as

---

1. Other suits between Mihalek and Michigan officials were pending at the time of filing briefs in this case. We need not discuss these actions here.

did Judge Joiner, found "substantial design differences." There was therefore no proof of copying found and summary judgment was granted in *Wickham*, regardless of plaintiff's contentions that defendants had access and had misappropriated his copyrighted design material.

■ A finding of substantial differences between the copyrighted material and the alleged copy has been found to justify a judgment for the defendant in copyright infringement proceedings, *Reyher v. Children's Television Workshop*, 533 F.2d 87 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). The burden is on plaintiffs to prove substantial similarity between the copyrighted material and the allegedly infringing material. *Wickham*, 739 F.2d at 1097; *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir.1980); *Sid & Marty Krofft Television Prod. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir.1977); *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir.1970); *Clarke v. G.A. Kayser & Sons*, 472 F.Supp. 481, 482 (W.D.Pa.1979), *aff'd mem.*, 631 F.2d 725 (3d Cir.1980).

■ In this case the materials themselves bespeak the expressions of the general ideas involved in a public relations campaign. It is the expressions of the ideas, not the general concepts, that are to be examined particularly, because ideas themselves and general concepts are not copyrightable. *Reyher*, 533 F.2d at 91; *Wickham*, 739 F.2d at 1097.

While the demarcation between idea and expression may not be susceptible to overly helpful generalization, it has been emphasized repeatedly that the essence of infringement lies in taking not a general theme but its particular expression through similarities of treatment, details, scenes, events and characterization. . . .

The question which remains is whether defendants in the instant case utilized the idea in Reyher's book or instead descended so far into the concrete as to invade her expression.
*Reyher*, 533 F.2d at 91.

■ In this case the works, materials, and expressions of Mihalek as compared with those utilized in the State's campaign are crucial and determinative, not the opinions of lay observers, who have made no careful determinations of the entire concepts involved.[2] *See Wickham*, 739 F.2d at 1097; *Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F.Supp. 154, 157 (S.D.N.Y.1980), *aff'd mem.*, 657 F.2d 262 (2d Cir.1981); *Clarke*, 472 F.Supp. at 482. All this pertinent evidence was before the district court to be examined as to the materials in dispute. We are unable to say the materials raised a genuine issue of material fact as to substantial similarity, even giving plaintiffs the benefit of all favorable inferences to be drawn. The court's conclusion that as a matter of law plaintiffs had failed to demonstrate copying or infringement by first showing that there were substantial similarities is not erroneous. Indeed, this court has itself carefully examined the materials in the record and finds that there are no substantial similarities, taking into account the "particular expression" through "treatment, details, scenes, events and characterization." See *Reyher* 533 F.2d at 91. The fact that plaintiffs envisioned a promotional campaign featuring the use of tee shirts, hats, slogans, pictures, and promotional events, and that the campaigns utilized by the State of Michigan incorporated these generally universal ideas, among many many other devices, in a public relations program to spotlight affirmative things about the State of Michigan is not any indication of similarity where the individual

---

**2.** Plaintiff also argues that a state Department of Commerce official conceded that there were some similarities in what Mihalek presented and what Michigan utilized in its campaign, "Say Yes to Michigan." What that official stated, however, was that he had the impression of "some similarity in concept ... [both were] involved with trying to create good feelings about

Michigan. . . . [T]hey wanted to bring good things out about Michigan." This shared general idea or concept to "create good feelings about Michigan," is not, of course, any material evidence to indicate that there was substantial similarity as to the details, means and specific methodology of accomplishing an advertising program to promote Michigan.

clothing items, slogans, pictures and events were substantially different.

We do not find *Blumcraft of Pittsburgh v. Newman Bros.*, 373 F.2d 905 (6th Cir. 1967), relied upon by plaintiffs, to be contrary to the district court decision. There the district court had before it the affidavit of an expert in the very field of dispute, an architect, who testified by "tracing paper comparison" that there had been actual copying, and this court on review indicated that "[s]ubstantial similarity between the two illustrations in question is obvious." *Id.* at 907. The facts and circumstances in *Blumcraft* are significantly different from those in the instant case. We are not persuaded by other authority cited by plaintiffs where infringement was found or indicated. Some authority involved an alleged patent violation, others involved admissions and concessions in copyrighted music cases where records were played without permission. We have considered carefully the authorities relied upon by plaintiffs, including *Wickham, Krofft Television,* and *Roth Greeting Cards,* and find them unpersuasive as to plaintiff's contentions on this issue. *International Luggage Registry v. Avery Products,* 541 F.2d 830 (9th Cir. 1976), for example, another case cited by plaintiff, is not comparable. It involved alleged copies of copyrighted luggage labels, which the appellate court found upon "casual examination ... reveals a marked likeness." As a consequence, it could not be said "as a matter of law that there is no substantial similarity." *Id.* at 831. (Similarly, *Peter Pan Fabrics v. Martin Weiner Corp.*, 274 F.2d 487 (2d Cir.1960) involving a "deliberate copyist" who had offered no evidence in defense of a copyright infringement claim is not persuasive under the circumstances of the instant case.)

"A general impression of similarity is not sufficient to make out a case of infringement", *Durham Indus.,* 630 F.2d at 912.

"Just as copyright protection extends to expression but not ideas, copyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features, of a protected work" and "only *substantial* similarity will support a determination of infringement." *Id.* at 913. Finally, "[a]s a matter of logic as well as law, the more numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other." *Id.,* (citing *Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.,* 509 F.2d 64, 65–66 (2d Cir. 1974)).

In this case the district court carefully examined the extensive programs and materials involved and concluded, as a matter of law that an average reasonable layperson upon such examination could not find substantial or sufficient similarity to establish copyright infringement. We have attempted to duplicate that examination and conclude that there is simply no substantial similarity involved in the two public relations programs or campaigns in dispute, and there is no demonstrated evidence of copying or wrongful appropriation of plaintiff's copyrighted expressions. Compare *Wickham,* where the court found no substantial similarity and a number of significant differences, as is the situation here. Compare also the situation and analysis in *Clarke,* with the instant case; *Clarke* also involved affirmance of a grant of summary judgment to a defendant in a copyright infringement case.

Accordingly, we AFFIRM the judgment of the district court that there is no copyright infringement established because of a lack of substantial similarity between the products.

Mihalek also contends that defendants have violated the Lanham Act (15 U.S.C. 1125(a)).[3] This claim involves whether

---

**3.** This Lanham Act section provides:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be

there has been a violation of the Act's prohibition against a "false designation of origin." This, in turn, requires an investigation into whether the works or campaign materials utilized by Michigan and the defendants are likely to cause confusion to the general public as to the origin of these materials. Mihalek claims that defendants "falsely attributed" to public relations firms inside and outside of Michigan and to state officials involved in the Michigan promotions at issue his expressions, business ideas, slogans, promotional schemes and campaigns in violation of the Lanham Act. (Brief for Appellant, 4/18/86 at 16.)

We have dealt with such a claim recently in *Frisch's Restaurants, Inc. v. Elby's Big Boy*, 670 F.2d 642 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) and set forth the factors to be considered with regard to similarity and likelihood of confusion. *See also Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir.1981), *cert. denied*, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982). This issue of violation under the Lanham Act presents an asserted federal cause of action.

Plaintiff contends that a factual issue concerning a Lanham Act violation has been raised by certain layperson affidavits filed to the effect that they believed that based on materials which they viewed in the course of the State of Michigan's "Say Yes to Michigan" and "Yes M!CH!GAN" campaigns, they may have been borrowed from Mihalek or that Mihalek must have been involved in these promotions. These contentions and the affidavits have been discussed in the earlier portion of this opinion dealing with the allegations of copyright infringement. Based upon the district court's own observations of the materials, the court found no substantial similarity involved, therefore no likelihood of confusion, and no false designation of origin exist as plaintiff is required to prove in this type of trademark violation claim. The district court, accordingly, determined

there was no material issue in dispute on the trademark claim that would preclude the grant of summary judgment to defendant on this issue.

Essentially for the reasons discussed fully on the copyright infringement claim, we find no error in the district court's determination. After a careful examination of the materials claimed to be protected under the Lanham Act and the particulars involved in the campaigns, we find no error in the findings of the court below. There is no substantial similarity in the products, or in the "marks" utilized, nor any substantial evidence of *actual confusion* based on side-by-side examination or comparison of Mihalek's work product as compared to that utilized by defendants.

■ As in the copyright infringement context, the trademark violation claim involves necessarily a careful comparison of the works or product claimed to be infringed or falsely designated or represented to determine similarity. In this kind of controversy as observed in *Litchfield v. Spielberg*, 736 F.2d 1352, 1355–56 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985), summary judgment may be "appropriate ... if reasonable minds could not differ as to the absence of substantial similarity in expression. *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983)." This trademark claim raises similar issues to the copyright claim as to substantial similarity, and if no substantial similarity is determined, then the trademark claim must also fail. *See Litchfield*, 736 F.2d at 1358; *Durham Indus.*, 630 F.2d at 918; *Warner Bros., Inc. v. American Broadcasting Co.*, 720 F.2d 231, 246 (2d Cir.1983).

The trial court considered the evidence presented relative to similarity or non-similarity and simply found no copyright or trademark violations involved within the meaning of the Lanham Act. We also AFFIRM this decision by the district court.

transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or

by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
15 U.S.C. 1125(a).

Having decided that there was no error in granting defendants' motion for summary judgment on the copyright and trademark claims, because there was no substantial similarity in the programs in dispute and therefore no infringement or violation by defendants as a matter of law, we next consider the other issues raised in appellant Mihalek's brief.

Following dismissal of some of Mihalek's claims in October of 1984 on the basis of immunity, plaintiff sought to serve on original defendants a "verified amendment" including "proposed class actions" under Fed.R.Civ.P. 23. Mihalek's alleged principal purposes in filing the amendment were to toll the statute of limitations, 17 U.S.C. § 507(b), with respect to certain defendants while an appeal was pending from the decision based on Eleventh Amendment immunity; and to add private parties who were involved in the promotional campaign utilized by the State of Michigan. The State moved to strike the amendment as a harassment effort and an attempt to accomplish through this means what the court had precluded in its prohibition against Mihalek's serving additional copyright notices and claims on those doing business with the state except for the addition of Ross Roy, Inc., the Detroit advertising agency, as a defendant.

In view of our holding that neither the copyright claim nor the trademark claim is sustainable against the original named defendants and Ross Roy, we find it unnecessary further to consider this contention concerning the class action claim. We also find it unnecessary to discuss the difficult question as to whether state immunity applies to a copyright and/or trademark violation claim. These latter claims are the principal ones upon which plaintiff relies in this controversy, and a decision on the application of the Eleventh Amendment to these claims is rendered unnecessary in light of the decision made and reached that no copyright or trademark infringement has been established on this record as a matter of law.

This Court has said repeatedly that it ought not pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of nonconstitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided.

*Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136, 67 S.Ct. 231, 234, 91 L.Ed. 128 (1946) (footnote omitted).

In summary, we affirm the summary judgment for defendants in this case, concluding for the reasons stated, based, among other reasons, on our examination of the record and the materials involved that there has been no copyright or trademark infringement demonstrated as a matter of law. The denial of Mihalek's amendment is rendered moot under those circumstances. We find it unnecessary, therefore, to address the Eleventh Amendment immunity issue. We AFFIRM the judgment for defendants for the reasons stated.